UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

RAYMOND ROBLES,

                                    Plaintiff,

                                                            9:07-CV-0464
v.                                                          (TJM/GHL)

K. BLEAU, Correctional Officer, Riverview C.F.;
PEACOCK, Correctional Sergeant, Riverview C.F.;
R. VARKIAR, Senior Counsel, Riverview C.F.; and
NEW YORK STATE DEP'T OF CORR. SERVS.,


                                    Defendants.

_____

APPEARANCES:                                            OF COUNSEL:

RAYMOND ROBLES, 05-R-5194
    Plaintiff, *Pro Se*
Cape Vincent Correctional Facility
Route 12E, Box 599
Cape Vincent, NY 13618

HON. ANDREW M. CUOMO                                    DAVID L. COCHRAN, ESQ.
Attorney General for the State of New York
    Counsel for Defendants
The Capitol
New York, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me by the Honorable Thomas J. McAvoy, Senior United States District Judge,

for Report and Recommendation with regard to any dispositive motions filed, pursuant to 28

U.S.C. § 636(b) and Local Rule 72.3(c).  Generally, in his Complaint, Raymond Robles

("Plaintiff") alleges that three employees of the New York State Department of Correctional

Services ("DOCS"), as well as DOCS itself, violated his rights under the Eighth and Fourteenth

Amendments when they (1) required him to submit to a random urinalysis test when they knew

he was taking a medication that would prevent him from providing a urine sample, and (2)

charged, convicted, and punished him with eighty-seven days in a Special Housing Unit for

refusing to provide a urine sample.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)  Currently

pending before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to

Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 16.)  For the reasons that follow, I recommend that

Defendants' motion be granted in part and denied in part.

## I.     BACKGROUND

### A.     Summary of Plaintiff's Complaint

As Defendants correctly observe in their Memorandum of Law, Plaintiff's Complaint–

which describes the events giving rise to his claims in two brief paragraphs without identifying

any role played by Defendants in those events–is hardly a model of *fair notice* under Fed. R. Civ.

P. 8(a)(2).  (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.].)  However, as explained below in Part II of this

Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants

generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's

motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the

extent that those factual assertions are consistent with the allegations of the plaintiff's

complaint.[1]  Here, I find that the factual allegations contained in Plaintiff's Response Affidavit

are consistent with the factual allegations of his Complaint.  As a result, in construing Plaintiff's

---

[1]        *See*, *infra*, note 41 of this Report-Recommendation (citing cases).

Complaint, I will consider his Response Affidavit as effectively amending the factual allegations of his Complaint.  Thus construed, Plaintiff's Complaint alleges as follows:

1.       On November 6, 2006, at about 7:28 a.m., Plaintiff was directed to report to the drug testing center at Riverview C.F.;[2]

2.       Upon arriving at the drug testing center, Plaintiff was informed by Correctional Officer K. Bleau ("Defendant Bleau") that he had been randomly selected to submit to urinalysis drug testing;[3]

3.       Defendant Bleau asked Plaintiff if he would provide a urine sample, and Plaintiff responded yes;[4]

4.       Defendant Bleau then asked Plaintiff if he was taking any medications, and Plaintiff explained that (1) yes, he was taking Flomax and Omeprazole due to a prostate condition and a stomach problem, and (2) "d[ue] to the medication[s]" and the fact that he had used the bathroom at approximately 7:10 a.m. that morning, he would need more water in order to urinate;[5]

5.       As Plaintiff was explaining these facts to Defendant Bleau, Defendant Bleau

---

[2]       (Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

[3]       (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

[4]       (Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"].)

[5]       (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

became upset and walked away from Plaintiff;[6]

6.      When he returned, Defendant Bleau then informed Plaintiff that, pursuant to DOCS Directive 4937, Plaintiff had three hours provide a urine sample or he would be considered to be refusing to provide the urine sample;[7]

7.      Defendant Bleau then gave Plaintiff a cup of water at approximately 7:30 a.m., and a second cup of water at approximately 9:30 a.m., but did not give him a third cup of water at approximately 8:30 a.m., as required by Part D.4. of DOCS Directive 4937;[8]

8.      At approximately 10:30 a.m., Plaintiff was still unable to provide a urine sample;[9]

9.      At that time, Defendant Bleau notified Correctional Sergeant Peacock ("Defendant Peacock") that Plaintiff was refusing a direct order to provide a urine sample;[10]

10.     When Plaintiff tried to explain to Defendant Peacock that his medical condition prevented him from providing the urine sample, Defendant Peacock responded, "Shut up and put [your] hands behind [your] back";[11]

---

[6]      (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

[7]      (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid., attaching page from DOCS Directive 4937].)

[8]      (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid., attaching page from DOCS Directive 4937].)

[9]      (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

[10]     (Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

[11]     (Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

11.     Both Defendants Bleau and Peacock failed to investigate or inquire as to why

Plaintiff had been prescribed Flomax and Omeprazole, or what the potential side effects of those

drugs were, although that information was readily obtainable from medical staff at Riverview

C.F.;[12]

12.     Instead, Defendants Bleau and/or Peacock escorted Plaintiff to the Riverview C.F.

Special Housing Unit ("S.H.U.");[13]

13.     On November 7, 2006, at about 8:55 a.m., while Plaintiff was in S.H.U., he was

served with a copy of a misbehavior report authored by Defendant Bleau, charging him with (1)

failing to comply with the urinalysis testing procedure, and (2) refusing a direct order to provide

a urine sample;[14]

14.     On November 10, 2006, Senior Correctional Counselor R. Varkiar conducted

Plaintiff's disciplinary hearing on the misbehavior report;[15]

15.     At the hearing, when Plaintiff entered a plea of "Not guilty, with an explanation,"

Defendant Varkiar gave Plaintiff "an opportunity to explain [him]self";[16]

16.     Plaintiff explained that he had a medical condition that prevented him from

---

[12]     (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 9 [Ex. 2 to Plf.'s Response Affid., attaching page of his Ambulatory Health Record].)

[13]     (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

[14]     (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

[15]     (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

[16]     (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

providing a urine sample, that he had attempted to inform Defendant Bleau of this medical condition (but Defendant Bleau walked away from Plaintiff), and that he had attempted to inform Defendant Peacock of this medical condition (but Defendant Peacock told Plaintiff to "[s]hut up");[17]

17.     Defendant Varkiar then made a telephone call; when he was done with the call, he told Plaintiff that (1) he had called the medical unit at Riverview C.F. to ask whether or not the medication that Plaintiff was taking would prevent him from urinating, and (2) someone in the medical unit had responded that no, the medication should not prevent Plaintiff from urinating;[18]

18.     Plaintiff then attempted to explain to Defendant Varkiar *why* he was taking one of the medications, specifically, to remedy a prostate problem that itself interfered with his ability to urinate;[19]

19.     However, Defendant Varkiar failed to call back the person in the medical unit at Riverview C.F. and request that he or she again answer the question he had posed before, taking into account Plaintiff's prostate condition as shown by his medical records;[20]

20.     As a result, Defendant Varkiar found Plaintiff guilty of both disciplinary charges,

---

[17]     (*Id.*)

[18]     (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

[19]     (Dkt. No. 17, at 2-3 [Plf.'s Response Affid.]; Dkt. No. 17, at 14-15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid., attaching page of information about Flomax].)

[20]     (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid., attaching page of information about Flomax].)

and sentenced him to ninety (90) days in S.H.U., with a corresponding loss of privileges;[21]

21.    At the conclusion of the hearing, Plaintiff received a written copy of the hearing disposition, which stated that the evidence relied on included (1) the statements in the written misbehavior report of Defendant Bleau (which Defendant Varkiar stated were credible), and (2) Plaintiff's own hearing testimony (which Defendant Varkiar stated was not credible);[22]

22.    On November 27, 2006, Plaintiff appealed his conviction to DOCS Director of Special Housing, Donald Selsky, who reversed the conviction on January 19, 2007;[23] and

23.    On February 1, 2007, Plaintiff was finally released from S.H.U., after spending eighty-seven (87) days there.[24]

It should be noted that, in addition to asserting constitutional claims against Defendants Bleau, Peacock, and Varkiar in their individual or personal capacities, Plaintiff's Complaint asserts a constitutional claim also against DOCS itself.  It should also be noted that, as relief for Defendants' actions, Plaintiff requests money damages but no injunctive relief.[25]

---

[21]    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

[22]    (Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 3 [Plf.'s Response Affid.].)

[23]    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3-4 [Plf.'s Response Affid.]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 16 [Ex. 8 to Plf.'s Response Affid., attaching Donald Selsky's Review of Superintendent's Hearing, issued on January 19, 2007].)

[24]    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 2 [Plf.'s Response Affid.].)

[25]    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)

**B.      Summary of Grounds in Support of Defendants' Motion**

Generally, Defendants' motion to dismiss for failure to state a claim is premised on two

grounds: (1) Plaintiff's claim against DOCS is barred by the Eleventh Amendment; and (2) the

allegations of Plaintiff's Complaint are too lacking in detail to give Defendants *fair notice* under

Fed. R. Civ. P. 8(a)(2).  (Dkt. No. 16, Part 2, at 2-5 [Defs.' Memo. of Law].)

## II.   LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for "failure

to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  It has long been

understood that a defendant may base such a motion on either or both of two grounds: (1) a

challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2);[26] or (2) a challenge to

the legal cognizability of the claim.[27]

---

[26]      *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[27]      *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."[28] The main purpose of this rule is to "facilitate a proper decision on the merits."[29] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis

---

12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord, Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[28]     *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz*, 534 U.S. at 512 [citation omitted]; *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) [citation omitted].

[29]     *Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

for the Court to assess the sufficiency of [plaintiff's] claims."[30]

The Supreme Court has long characterized this pleading requirement under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[31]   However, it is well established that even this liberal notice pleading standard "has its limits."[32]   As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard.[33]

---

[30]      *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion), *accord*, *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov. 30, 1998), *Flores v. Bessereau*, 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.)   Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[31]      *See, e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[32]      2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[33]      *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1974 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord*, *Dura Pharmaceuticals*, 125 S. Ct. at 1634-1635, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of

10

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly*, the

Supreme Court, in reversing an appellate decision holding that a complaint had stated an

actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for

failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief."  127 S. Ct. 1955, 1968-69 (2007).[34]

Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Fed. R.

Civ. P. 8 "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 1965-74.

More specifically, the Court reasoned that, by requiring that a pleading "show[] that the

pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2) requires that the pleading give the defendant

"fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests.  *Id*. at

1965, n.3 [citation omitted].  While this does not mean that a pleading need "set out in detail the

facts upon which [the claim is based]," it does mean that the pleading contain at least "some

factual allegation[s]."  *Id*. [citations omitted].  More specifically, the "[f]actual allegations must

be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of

course, that all the allegations in the complaint are true.  *Id*. at 1965 [citations omitted].  What

this means, on a practical level, is that there must be "plausible grounds to infer [actionable

---

*Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the
Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

    [34]    The Court in *Twombly* further explained: "The phrase is best forgotten as an
incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately
stated, it may be supported by showing any set of facts consistent with the allegations in the
complaint. . . .  *Conley*, then, described the breadth of opportunity to prove what an adequate
complaint claims, not the minimum standard of adequate pleading to govern a complaint's
survival."  *Twombly*, 127 S. Ct. at 1969.

conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.*

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Twombly*).[35]  The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[36]

It should be emphasized that Fed. R. Civ. P. 8's plausibly standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which the Court stated, "Specific facts are not necessary" to

---

[35]     *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir. 2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.'") [citation omitted]; *Goldstein v. Pataki*, 07-CV-2537, 2008 U.S. App. LEXIS 2241, at *14 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires . . . that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level . . . .'") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98, n.2 (2d Cir. 2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original].

[36]     *See, e.*, *Jacobs v. Mostow*, 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1]); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir. 2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

12

successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197,

2200 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated

point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out in

detail the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*,

127 S. Ct. 1965, n.3 (citing *Conley v. Gibson*, 355 U.S. 41, 47 [1957]). That statement in no way

meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the

nature of the nature of the claim and the "grounds" on which the claim rests without ever having

to allege any facts whatsoever.[37] There must still be enough fact alleged to raise a right to relief

---

[37]     For example, in *Erickson*, a district court had dismissed a *pro se* prisoner's civil
rights complaint because, although the complaint was otherwise factually specific as to how the
prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of
approximately 18 months, the complaint (according to the district court) failed to allege facts
plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S. Ct. at
2199. The Supreme Court vacated and remanded the case because (1) under Fed. R. Civ. P. 8
and *Twombly*, all that is required is a "a short and plain statement of the claim" sufficient to "give
the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff
had alleged that the termination of his hepatitis C medication for 18 months was "endangering
[his] life" and that he was "still in need of treatment for [the] disease." *Id*. at 2200. While
*Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and
the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need
mentioning in the short decision: a claim of deliberate indifference to a serious medical need
under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious
medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental
state possessed by prison officials with regard to that sufficiently serious medical need. The
*Erickson* decision had to do with only the first element, not the second element. *Id*. at 2199-
2200. In particular, the decision was merely recognizing that an allegation by a plaintiff that,
during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation
plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not
*also* allege that he suffered an independent and "substantial injury" as a result of the termination
of his hepatis C medication. *Id*. This point of law is hardly a novel one. For example, numerous
decisions, from district courts within the Second Circuit alone, have found that suffering from
hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment.
*See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004);
*Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson
v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002

above the speculative level to a plausible level, so that the defendant may know what the claims

are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for

dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the

complaint as true and construe all reasonable inferences in the plaintiff's favor."[38]  "This standard

is applied with even greater force where the plaintiff alleges civil rights violations or where the

complaint is submitted *pro se*."[39]  In other words, as stated above, while all pleadings are to be

construed liberally under Fed. R. Civ. P. 8(e), *pro se* civil rights pleadings are to be construed

with an *extra* degree of liberality.[40]

For example, the mandate to read the papers of *pro se* litigants generously makes it

appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as

effectively amending the allegations of the plaintiff's complaint, to the extent that those factual

---

WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

[38]    *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[39]    *Hernandez*, 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

[40]    *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] *pro se* complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers . . . .") [internal quotation marks and citation omitted]; *McEachin v. McGinnis*, 357 F.3d 197, 200 (2d Cir. 2004) ("[W]hen the plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.") [citation omitted].

assertions are consistent with the allegations of the plaintiff's complaint.[41]  Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[42]  Furthermore, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[43]  Of course, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[44]  In addition, granting a *pro se* plaintiff an opportunity to

---

[41]     "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

[42]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

[43]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) [internal quotation and citation omitted]; *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[44]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice)

amend is not required where the plaintiff has already been given a chance to amend his

pleading.[45]

However, while this special leniency may somewhat loosen the procedural rules

governing the form of pleadings (as the Second Circuit very recently observed),[46] it does not

completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.

R. Civ. P. 8, 10 and 12.[47]   Rather, as both the Supreme Court and Second Circuit have repeatedly

recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that

---

[citation omitted].

[45]      *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2, n.14 (N.D.Y.Y. July 11,
2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-
1433, 2007 WL 201109, at *5, n.34 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-
recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007
WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of
Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404, at *4, n.30
(N.D.N.Y. Jan. 4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v.
Cent. Office Review Comm.*, 03-CV-0407, 2006 WL 2794415, at *5, n.18 (N.D.N.Y. Sept., 26,
2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver*, 03-CV-
0912, 2006 WL 2799417, at *4, n.16 (N.D.N.Y. Sept. 26, 2006)  (Kahn, J., adopting report-
recommendation of Lowe, M.J.).

[46]      *See Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at
*5 (2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants
liberally] entails, at the very least, a permissive application of the rules governing the form of
pleadings.") [internal quotation marks and citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95
(2d Cir. 1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of
important rights because of their lack of legal training . . . should not be impaired by harsh
application of technical rules.") [citation omitted].

[47]      *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading
standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from
dismissal for failing to comply with Fed. R. Civ. P. 8]); *accord*, *Shoemaker v. State of Cal.*, 101
F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited
only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within
the Second Circuit]; *accord*, *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

even *pro se* civil rights plaintiffs must follow.[48]  Stated more plainly, when a plaintiff is

proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."[49]

## III.   ANALYSIS

### A.   Whether Plaintiff's Claim Against DOCS is Barred by the Eleventh Amendment

For the reasons offered by Defendants in their Memorandum of Law, I agree with them

that Plaintiff's constitutional claims against Defendant DOCS are barred by the Eleventh

Amendment to the United States Constitution.  (Dkt. No. 16, Part 2, at 2-3 [Defs.' Mem. of

---

[48]      *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

[49]      *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980); *accord, Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n.27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F. Supp.2d 305, 307 (W.D.N.Y. 2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n.11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan. 4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

Law].)  In the interest of brevity, I will not repeat the well-established points of law that they

correctly cite in support of their argument.  Instead, I will only add three points that Defendants

do *not* make in their succinct argument: (1) where it has been successfully demonstrated that a

defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court

lacks subject matter jurisdiction over the case (or claim), and "the case [or claim] *must* be

stricken from the docket";[50] (2) Plaintiff's civil rights claims against Defendant DOCS (an entity)

are barred also by the express language of 42 U.S.C. § 1983, which confers liability upon only

any "*person* who . . . subjects, or causes to be subjected, any citizen of the United States . . . to

the deprivation of any rights, privileges, or immunities secured by the Constitution and laws

. . . ."[51]; and (3) because the defect with this claim is substantive rather than merely formal, better

pleading will not cure it, and thus it should be dismissed with prejudice.[52]

     For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's

claims against Defendant DOCS.

     It should be noted that, in addition to barring Plaintiff's constitutional claims against

Defendant DOCS, the Eleventh Amendment would also bar any claim by Plaintiff against

Defendants Bleau, Peacock and Varkiar in their official capacities.[53]  However, because I do not

---

[50]   *McGinty v. State of New York*, 251 F.3d 84, 100 (2d Cir. 2001) [citation omitted];
*see also* Fed. R. Civ. P. 12(h)(3).

[51]   42 U.S.C. § 1983 [emphasis added].

[52]   *See*, *supra*, note 44 of this Report-Recommendation.

[53]   *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993) ("The
immunity to which a state's official may be entitled in a § 1983 action depends initially on the
capacity in which he is sued.  To the extent that a state official is sued for damages in his official
capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke

even liberally construe Plaintiff's Complaint (and Response Affidavit) as asserting such claims,

no need exists to recommend the dismissal of those claims.  (*See generally* Dkt. No 1, 17.)

**B.     Whether the Allegations of Plaintiff's Complaint Are Too Lacking in Detail to Give Defendants *Fair Notice* under Fed. R. Civ. P. 8(a)(2)**

For the reasons offered by Defendants in their Memorandum of Law, I agree with them

that Plaintiff's Complaint–when considered alone–is too lacking in detail to give Defendants the

fair notice that is required under Fed. R. Civ. P. 8(a)(2).    (Dkt. No. 16, Part 2, at 3-5 [Defs.'

Mem. of Law].)  However, as explained above in Part II of this Report-Recommendation, the

mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to

consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively

amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are

consistent with the allegations of the plaintiff's complaint.[54]  Here, when construing Plaintiff's

Complaint together with his Response Affidavit, I find that Plaintiff's allegations *are* detailed

---

the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . .  As such, it is no different from a suit against the State itself. . . . We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky*, 05-CV-0501, 2007 WL 433375, at *4 (N.D.N.Y. Feb. 6, 2007) (Sharpe, J.) [citing cases].

[54]      *See*, *infra*, note 41 of this Report-Recommendation (citing cases).

enough to give Defendants the fair notice that is required under Fed. R. Civ. P. 8(a)(2).  *See*, *supra*, Part I.A. of this Report-Recommendation.

However, this does not end the Court's analysis of Plaintiff's Complaint because, even where a defendant has not advanced a certain argument on a motion to dismiss in a *pro se* prisoner civil rights case, a district court may (and, indeed, has a duty to) *sua sponte* address whether the pleading in such a case has successfully stated a claim upon which relief may be granted.[55] Here, Plaintiff's Complaint is plagued by several defects (some substantive and some formal)[56] that simply cannot be overlooked.

### C.    Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau, Peacock and Varkiar Arising Out of Plaintiff's Being Required to Provide a Urine Sample Given Their Knowledge of His Medications and/or Medical Condition

Among Plaintiff's claims is a claim that "[i]t is neither lawful nor[] reasonable to expect an Inmate to perform a bodily function on command when you know or should know that his medical condition and prescribed treatment plan indicate that when he urinates[,] and when he [can] not[,] can be beyond his control." (Dkt. No. 17, at 5 [Plf.'s Response Affid.].)  I liberally

---

[55]    The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ."

[56]    As explained above in Part II of this Report-Recommendation, a dismissal for failure to state a claim may be based not only on a successful challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2), but also on a successful challenge to the legal cognizability of the claims asserted in the pleading.  *See*, *supra*, notes 26 and 27 of this Report-Recommendation.

construe this claim as one of harassment or perhaps inadequate-prison-conditions under the

Eighth Amendment.  (To the extent that this allegation is also used to support a procedural due

process claim under the Fourteenth Amendment, I address that claim below in Parts III.D. and

III.E. of this Report-Recommendation.)

The problem with Plaintiff's Eighth Amendment claim is that the rather detailed facts

alleged by him in support of that claim do not suggest in any way that any of the three individual

Defendants were acting with the sort of mental state that is required for them to incur liability

under the Eighth Amendment, namely, *deliberate indifference*.  Deliberate indifference is a state

of mind akin to *criminal recklessness*, which involves *knowing* of and disregarding an excessive

risk to inmate health or safety.[57]  Here, Plaintiff himself alleges that the three individual

Defendants did not in fact *understand* that he could not urinate due to his prostate condition.

Indeed, as he was trying to explain his medical condition to Defendants, (1) Defendant Bleau

became angry and "walked away" from Plaintiff, (2) Defendant Peacock told Plaintiff to "[s]hut

up," and (3) Defendant Varkiar failed to call back the person in the medical unit of Riverview

---

[57]     *Farmer v. Brennan,* 511 U.S. 825, 827 (1994) ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness . . . .") [citation omitted]; *accord, Koehl v. Greene*, 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept. 26, 2007) (Kahn, J.), *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *15, n.124 (N.D.N.Y. Jan. 23, 2007) (Kahn, J.), *Salaam v. Adams*, 03-CV-0517, 2006 WL 2827687, at *10, n.59 (N.D.N.Y. Sept. 29, 2006) (Kahn, J.).

C.F. and ask him or her to report (to Varkiar) the impact of Plaintiff's prostate condition on his ability to urinate. *See*, *supra*, Part I.A. of this Report-Recommendation.[58]

At its heart, Plaintiff's Eighth Amendment claim alleges that the three individual Defendants *should have known* that he could not urinate during the time in question due to his enlarged prostate, but that they did not know that fact because they *failed to investigate* the nature and effects of his prostate condition. In other words, his Eighth Amendment claim is one of *negligence*. Such a claim is simply not actionable under the Eighth Amendment (or any constitutional provision). As is often observed, "[D]eliberate indifference describes a state of mind more blameworthy than negligence."[59] Finally, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it.[60]

---

[58]     In addition, it is worth noting that Plaintiff's explanation to Defendant Bleau consisted of a statement that Plaintiff could not urinate because of his prostate *medication*, not because of his prostate *condition*. *See*, *supra*, Part I.A. of this Report-Recommendation. As a result, Defendant Bleau would not have become *aware* of the reason for Plaintiff's inability to urinate (which Plaintiff now alleges was his prostate *condition*, not his prostate *medication*), even if Defendant Bleau had remained in Plaintiff's presence and listened to his explanation.

[59]     *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo*, 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr. 9, 1998) (Pooler, J.) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence. . . . Disagreement with prescribed treatment does not rise to the level of a constitutional claim. . . . Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate. . . . Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

[60]     *See*, *supra*, note 44 of this Report-Recommendation.

For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's

Eighth Amendment claim.

>       **D.**     **Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau**
>              **and Peacock Arising Out of His Receipt of an Erroneous or False**
>              **Misbehavior Report**

It is well established that "a prison inmate has no general constitutional right to be free

from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d

Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 [2d Cir. 1986]).[61]  Rather, the only way

that false accusations contained in a misbehavior report can rise to the level of a constitutional

violation is when there is "more, such as retaliation against the prisoner for exercising a

constitutional right." *Boddie*, 105 F.3d at 862; *accord*, *Murray v. Pataki*, 03-CV-1263, 2007

U.S. Dist. LEXIS 26959, at *26 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted].

Here, Plaintiff alleges no actionable conduct regarding his being issued the misbehavior

report in question, such as retaliation against him for exercising a constitutional right.  *See*,

*supra*, Part I.A. of this Report-Recommendation.  Moreover, because the defect with this detailed

---

[61]     *Accord*, *Lugo v. Van Orden*, 07-CV-0879, 2008 U.S. Dist. LEXIS 56707, at *7
(N.D.N.Y. July 23, 2008) (McAvoy, J.); *Darvie v. Countryman*, 08-CV-0715, 2008 U.S. Dist.
LEXIS 60931 (N.D.N.Y. Aug. 7, 2008) (Sharpe, J.), *adopting* 2008 U.S. Dist. LEXIS 52797, at
*18, n.5 (N.D.N.Y. July 10, 2008) (Lowe, M.J.); *Anderson v. Banks*, 06-CV-0625, 2008 U.S.
Dist. LEXIS 60896, at *16-17 (N.D.N.Y. May 19, 2008) (Homer, M.J.), *adopted by* 2008 U.S.
Dist. LEXIS 60932 (N.D.N.Y. Aug. 6, 2008) (Sharpe, J.); *Stewartson v. Almstead*, 04-CV-1097,
2008 U.S. Dist. LEXIS 22178, at *7 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *McEachin v.
Goord*, 06-CV-1192, 2008 U.S. Dist. LEXIS 27479, at *12 (N.D.N.Y. Feb. 8, 2008) (Treece,
M.J.), *adopted by* 2008 U.S. Dist. LEXIS 31879 (N.D.N.Y. Apr. 17, 2008) (Hurd, J.); *Murray v.
Pataki*, 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *27 (N.D.N.Y. March 5, 2007) (Treece,
M.J.), *adopted by* 2007 U.S. Dist. LEXIS 23065 (N.D.N.Y. March 29, 2007) (Kahn, J.); *Madera
v. Goord*, 103 F. Supp.2d 536, 542 (N.D.N.Y. 2000) (Kahn, J., adopting Report-
Recommendation by Di Bianco, M.J.).

claim is substantive rather than merely formal, I find that better pleading will not cure it.[62]

For these reasons, I recommend that the Court dismiss with prejudice Plaintiff's

Fourteenth Amendment false-misbehavior-report claim.

### E.   Whether Plaintiff Has Stated an Actionable Claim Against Defendant Varkiar Arising Out of Plaintiff's Erroneous or Unjustified Disciplinary Conviction

"[Courts] examine procedural due process questions in two steps: the first asks whether

there exists a liberty or property interest which has been interfered with by the State . . . ; the

second examines whether the procedures attendant upon that deprivation were constitutionally

sufficient . . . ." *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  With regard to

the first question, in 1995, the Supreme Court held in *Sandin v. Connor* that liberty interests

protected by the Fourteenth Amendment's Due Process Clause will not arise from the use of

mandatory language of a particular state law or regulation, but "will generally be limited to

freedom from restraint which . . . imposes atypical and significant hardship on the inmate in

relation to the ordinary incidents of prison life."  *Sandin v. Connor*, 515 U.S. 472, 483-484

(1995).

Here, Plaintiff alleges that the disciplinary hearing conducted by Defendant Varkiar

resulted in a sentence of eighty-seven (87) days in the Riverview C.F. S.H.U. with a

corresponding loss of privileges.  *See*, *supra*, Part I.A. of this Report-Recommendation.

Numerous district courts in this Circuit have issued well-reasoned decisions finding no atypical

and significant hardship experienced by inmates who served sentences in S.H.U. of far more than

the eighty-seven (87) days alleged here–even where the conditions of confinement in the S.H.U.

---

[62]        *See*, *supra*, note 44 of this Report-Recommendation.

were, to varying degrees, more restrictive than those in the prison's general population.[63]  As a result, I find that Plaintiff has not alleged facts plausibly suggesting that he possessed, during the disciplinary hearing, a liberty interest that was protected by the Fourteenth Amendment.

However, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice.  This is because it is conceivable to me that Plaintiff's Complaint and Response Affidavit–which are silent with regard to the conditions of confinement he experienced in the Riverview C.F. S.H.U.–may be amended so as to allege facts plausibly suggesting that those conditions were so restrictive as to impose on Plaintiff an *atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life* (thus conferring on him a protected liberty interest under the Fourteenth Amendment).

I should also point out that, even assuming (for the sake of argument) that Plaintiff possessed a protected liberty interest with regard to his disciplinary hearing, I find that he has alleged facts plausibly suggesting that he was, in fact, given all the process that he was due under

---

[63]     *See, e.g., Spence v. Senkowski,* 91-CV-0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr. 17, 1998) (McCurn, J.) (180 days that plaintiff spent in S.H.U., where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); *accord*, *Husbands v. McClellan*, 990 F. Supp. 214, 217-19 (W.D.N.Y. 1998) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin*, 985 F. Supp. 350, 353-56 (W.D.N.Y. 1997) (161 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky*, 96-CV-2003, 1997 WL 137448, at *4-6 (S.D.N.Y. 1997) (192 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin*, 949 F. Supp. 112, 116-17 (N.D.N.Y. 1996) (Smith, M.J.) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin*, 94-CV-4094, 1996 WL 487951, at *4-5 (S.D.N.Y. Aug. 27, 1996) (210 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero*, 905 F. Supp. 99, 103-04 (W.D.N.Y. 1995) (270 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population).

the circumstances. Specifically, Plaintiff alleges that he was given the following: (1) timely notice of the misbehavior report: (2) an "opportunity to explain [him]self" at his disciplinary hearing; (3) a written disciplinary hearing disposition; (4) a disciplinary hearing disposition that was based on at least some evidence (e.g., his own hearing testimony, which Defendant Varkiar found to be not credible); and (5) an opportunity to appeal the disciplinary hearing disposition (which he did so successfully). *See*, *supra*, Part I.A. of this Report-Recommendation.

Of course, the defect that Plaintiff alleges occurred at his disciplinary hearing was Defendant Varkiar's failure to use the telephone to call back the person in the medical unit at Riverview C.F. and request that he or she again answer the question of whether Plaintiff was physically unable to urinate, taking into account his prostate condition as shown by his medical records. *Id.* Generally, it is not the duty of an impartial hearing officer to conduct an investigation of the merit of the disciplinary charges against an inmate; rather, the duty of a hearing officer is merely to review the evidence presented to him at the disciplinary hearing, and in *certain circumstances* identify defense witnesses for the inmate.[64] Here, I find that Plaintiff

---

[64]    *Jackson v. Onondaga County*, 05-CV-1393, 2008 U.S. Dist. LEXIS 64930, at *40 & n.46 (N.D.N.Y. Jan. 8, 2008) (Lowe, M.J.) [citations omitted], *adopted on* de novo *review by* 05-CV-1393, 2008 U.S. Dist. LEXIS 22175 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *see also Martin v. Mitchell*, 92-CV-0716, 1995 U.S. Dist. LEXIS 19006, at *10-12 (N.D.N.Y. Nov. 24, 1995) (McAvoy, C.J.) (rejecting plaintiff's assertion that prison disciplinary hearing officer "had a duty to investigate the identity of [a correction officer identified by the plaintiff merely as] 'Budd' and call him to testify"); *Hampton v. McGinnis*, 89-CV-6344, 1992 U.S. Dist. LEXIS 15696, at *6 (S.D.N.Y. Oct. 15, 1992) ("[I]t was not [the disciplinary hearing officer's] duty to investigate [the prisoner's assault] claim, and plaintiff was not precluded from offering his own evidence on that subject."); *cf. Kingsley v. Bureau of Prisons*, 937 F.2d 26, 31 (2d Cir. 1991) (under circumstances, a hearing officer did have a duty to identify the name of the plaintiff's desired witness because [1] the plaintiff had an "especially compelling" need for the witness, [2] the witness's identity was "readily available" to the hearing officer, [3] the plaintiff had arrived at the prison only five days earlier, [4] fulfilling the request would not have delayed the imposition of "swift discipline," and [5] "no other institutional objective was implicated").

has alleged no circumstances conferring on Defendant Varkiar a duty to call back the medical

unit at Riverview C.F.  For example, I find that Plaintiff's Complaint and Response Affidavit are

devoid of any allegation that, at his disciplinary hearing, he requested and was denied an

adjournment of the hearing so that, with the help of a legal assistant, he could obtain his medical

records and call as a witness a member of the medical unit, in order that he himself could

introduce testimony that his prostate condition prevented him from urinating during the time in

question.  *See*, *supra*, Part I.A. of this Report-Recommendation.  However, again, such a finding

leads only to a recommendation that this claim be dismissed *without* prejudice, because it is

conceivable to me that Plaintiff's Complaint and Response Affidavit may be amended to allege

facts plausibly suggesting that, at his disciplinary hearing, he made, and was denied, such a

request.

For these reasons, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment

procedural due process claim regarding his disciplinary hearing if, within thirty (30) days from

the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an

Amended Complaint that successfully states a Fourteenth Amendment procedural due process

claim regarding his disciplinary hearing.

Finally, two points bear mentioning.  First, to the extent that Plaintiff is attempting to

allege that his procedural due process rights were violated at his disciplinary hearing also because

Defendant Bleau violated Part D.4. of DOCS Directive 4937 by giving Plaintiff only two cups of

water during the three-hour period in question, that allegation is not actionable under the

circumstances.  Section 1983 provides, in pertinent part, "Every person who . . .subjects, or

causes to be subjected, any citizen of the United States or other person within the jurisdiction

thereof to the deprivation of any rights, privileges, or immunities secured by *the Constitution and laws*, shall be liable to the party injured . . . ."  42 U.S.C. § 1983 [emphasis added].  The term "the Constitution and laws" refers to the United States Constitution and *federal* laws.[65]  A violation of a state law or regulation, *in and of itself*, does not give rise to liability under 42 U.S.C. § 1983.[66]  Furthermore, the violation of a DOCS Directive, alone, is not even a violation of New York State law or regulation;[67] this is because a DOCS Directive is "merely a system the [DOCS] Commissioner has established to assist him in exercising his discretion," which he retains, despite any violation of that Directive.[68]

---

[65]     *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970) ("The terms of § 1983 make plain two elements that are necessary for recovery.  First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States*.") (emphasis added); *Patterson v. Coughlin*, 761 F.2d 886, 890 (2d Cir. 1985) ("Recovery under 42 U.S.C. § 1983 . . . is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or *federal* statutory right. . . .") (citation omitted; emphasis added); *Fluent v. Salamanca Indian Lease Auth.*, 847 F. Supp. 1046, 1056 (W.D.N.Y. 1994) ("The initial inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the Constitution and laws' *of the United States*.") [emphasis added].

[66]     *See Doe v. Conn. Dept. of Child & Youth Servs.*, 911 F.2d 868, 869 (2d Cir. 1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson*, 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983 . . . .") (citation omitted); *Murray v. Michael*, 03-CV-1434, 2005 WL 2204985, at *10 (N.D.N.Y. Sept. 7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary hearings . . . do not rise to the level of constitutional violations.") (citation omitted); *Rivera v. Wohlrab*, 232 F. Supp.2d 117, 123 (S.D.N.Y. 2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.'") (citing *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 [2d Cir. 1990]).

[67]     *See Rivera v. Wohlrab*, 232 F. Supp.2d 117, 123 (S.D.N.Y. 2002) (citation omitted); *Lopez v. Reynolds*, 998 F. Supp. 252, 259 (W.D.N.Y. 1997).

[68]     *See Farinaro v. Coughlin*, 642 F. Supp. 276, 280 (S.D.N.Y. 1986).

Second, in making the above recommendation (that Plaintiff be required to file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing, upon penalty of dismissal), I am in no way "issuing specific instructions [to Plaintiff] mandating the content and format of the putative amended complaint"–instructions that the Second Circuit recently found erroneous in the case of *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *6 (2d Cir. Aug. 12, 2008).  Rather, I am merely reporting my finding that Plaintiff's current Fourteenth Amendment procedural due process claim regarding his disciplinary hearing fails to state a claim upon which relief might be granted, as pleaded.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 16) be **GRANTED in part** and **DENIED in part** in the following respects:

(1) Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Varkiar regarding his disciplinary hearing be **DISMISSED** if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing; and

(2) The other claims asserted in Plaintiff's Complaint (as effectively amended by his Response Affidavit) be **DISMISSED with prejudice**, and without condition.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal**

holiday, in which case add a fourth calendar day).  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b); N.D.N.Y. L.R. 72.1(c); Fed. R. Civ. P. 6(a)(2), (d).

       **BE ADVISED that the District Court, on *de novo* review, will ordinarily refuse to**

**consider arguments, case law and/or evidentiary material that could have been, but was**

**not, presented to the Magistrate Judge in the first instance**.[69]

       **BE ALSO ADVISED that the failure to file timely objections to this Report-**

**Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of**

**judgment that will be entered**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small*

*v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

---

[69]     *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994)
("In objecting to a magistrate's report before the district court, a party has no right to present
further testimony when it offers no justification for not offering the testimony at the hearing
before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World
Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not
abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff
"offered no justification for not offering the testimony at the hearing before the magistrate");
*Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18 n.8 (S.D.N.Y. Sept. 30, 1993)
(declining to consider affidavit of expert witness that was not before magistrate) [citation
omitted]; s*ee also Murr v. U.S.*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) ("Petitioner's failure to
raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421,
1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's
recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535
(5th Cir. 1994) ("By waiting until after the magistrate judge had issued its findings and
recommendations [to raise its procedural default argument] . . . Respondent has waived
procedural default . . . objection[].") [citations omitted]; *Greenhow v. Sec'y of Health & Human
Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before
the magistrate and, if unsuccessful, to change their strategy and present a different theory to the
district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds
by U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992); *Patterson-Leitch Co. Inc. v. Mass. Mun.
Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not
entitled as of right to de novo review by the judge of an argument never seasonably raised before
the magistrate.") [citation omitted].

Dated: September 12, 2008
      Syracuse, New York

George H. Lowe
United States Magistrate Judge